UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. _____

_____

UNITED STATES OF AMERICA,
        Plaintiff,

v.                                                     **COMPLAINT**

ARMSTRONG WORLD INDUSTRIES, INC.
(ON BEHALF OF ARMSTRONG WOOD
PRODUCTS, INC.), VIACOMCBS, AND
TCOM, L.P.,
        Defendants.

_____

The Plaintiff, the United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), by its undersigned attorneys, alleges as follows:

## STATEMENT OF THE CASE

1. This is a civil action under Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607. The United States seeks to recover costs incurred and to be incurred in conducting actions in response to the release or threatened release of hazardous substances at or from the Triangle Pacific Corporation Site ("Site) in Pasquotank County, North Carolina. The United States also seeks injunctive relief requiring the Defendants to perform certain response actions at the Site consistent with the national contingency plan, 40 C.F.R. Part 300.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action, and the parties hereto, pursuant to 42 U.S.C. §§ 9606 and 9613(b), and 28 U.S.C. §§ 1331 and 1345.

3. Venue is proper in this district under 42 U.S.C. §§ 9606(a) and 9613(b), and 28 U.S.C. § 1391(b), because the release and/or threatened release of hazardous substances that give rise to this complaint occurred in this district and because the Site is located in this district.

## DEFENDANTS

4. Armstrong World Industries, Inc. ("Armstrong") is a corporation organized under the laws of Pennsylvania with its corporate office located at Lancaster, Pennsylvania. It is the successor to Armstrong Wood Products, Inc. Armstrong purchased a portion of the Site in 1979, and, while it ceased cabinet manufacture operations in 1996, Armstrong is a current owner of property.

5. ViacomCBS ("CBS") is a corporation organized under the laws of Delaware with its corporate office located at New York, New York. From 1966 to 1979, CBS owned portions of the Site and operated as a cabinet manufacturer. CBS does not currently own property on the Site.

6. TCOM, L.P. ("TCOM") is a corporation organized under the laws of Delaware with its corporate office located in Columbia, Maryland. TCOM

purchased much of the Site property in 1996 from Armstrong and remains a current owner of a portion of the Site.

7. The Defendants are "persons" as defined in Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## STATUTORY FRAMEWORK

8. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants and for funding the costs of such abatement and related enforcement activities, which are known as "response actions." 42 U.S.C. §§ 9604(a), 9601(25).

9. Under Section 104(a)(1) of CERCLA:

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment . . . .

42 U.S.C. § 9604(a)(1).

10. For CERCLA response actions and enforcement purposes, the Administrator of EPA is the President's delegate, as provided in operative Executive

Orders, and, within certain limits, the Regional Administrators of EPA have been re-delegated this authority, which has been further re-delegated to the Director of the Superfund Division.

11. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section —
> (1) the owner and operator of a vessel or a facility,
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for —
> > (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan;

12. Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), provides in pertinent part:

> [W]hen the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may . . . secure such relief as may be necessary to abate such danger or threat . . . .

## GENERAL ALLEGATIONS

13. The Site sits on approximately 188 acres 5.5 miles southeast of Elizabeth City at 1268 Toxey Road in Pasquotank County, North Carolina.

14. The Navy owned and operated the Site property as the Weeksville Naval Air Station from 1943 to 1964. In 1991, the Site was determined to be a formerly Used Defense Site ("FUDS"), which is defined as a facility or site that was

4

under the jurisdiction of the Secretary of Defense and owned by, leased to, or otherwise possessed by the United States at the time of actions leading to contamination by hazardous substances, the site having been transferred from United States control prior to October 17, 1986. The United States Army Corps of Engineers ("USACE") addresses claims related to FUDS on behalf of the Department of Defense, acting as Settling Federal Agency ("SFA"), and remains subject to SFA oversight.

15. From 1967 to at least 1977, CBS owned portions of the Site and operated as a cabinet manufacturer on the property. Triangle Pacific Corporation (Armstrong) purchased a portion of the Site in 1979 and continued operations as a cabinet manufacturer from 1979 to 1996. CBS is no longer a Site owner. Armstrong and TCOM are current owners.

16. The cabinet manufacturing activities by CBS and Armstrong generated two separate hazardous waste streams and one non-hazardous waste stream. The waste streams were created from spent non-halogenated solvent based toner and lacquer thinner and lacquer dust. The toner and lacquer thinner reportedly contained various chemicals including methyl ethyl ketone, toluene, acetone, and isobutanol, and several metals including cadmium and arsenic.

17. The North Carolina Department of Environment, Health, and Natural Resources ("NCDENR"), the precursor agency of the North Carolina Department of

Environmental Quality ("NCDEQ"), completed a Preliminary Assessment of the Site in 1987. In June and December of 1990, the NCDENR conducted Phase I and II of Screen Site Investigations ("SSIs"). The Phase I SSI identified that the Site was located near wetlands, the Pasquotank River, and Newbegun Creek, and it found that groundwater in the region was used as a drinking water source. The investigations also identified the two hazardous waste streams from manufacturing operations and the presence of the on-Site landfill (Landfill Area). The Phase II SSI identified the presence of the Storage Tank Area and Boiler House. Samples of surface soil, surface water, sediment, and groundwater were collected from various media to assess the potential for environmental releases. These samples were analyzed for target compound list (TCL) volatile organic compounds (VOCs) and semi-volatile organic compounds (SVOCs), and for target analyte list (TAL) metals and cyanide. The results indicated the presence of various constituents in environmental media.

18. In December 1995, EPA conducted a Supplemental Screening Inspection, which included the collection of four surface soil and sediment samples. These samples were analyzed for TCL VOCs, SVOCs, pesticides, polychlorinated biphenyls (PCBs), TAL metals, and cyanide.

19. In September 1998, CBS/Armstrong conducted an Expanded Site Investigation ("ESI") under the terms of an Administrative Order on Consent ("AOC") entered into with EPA. The ESI included a collection of soil samples from

a background location, the Tank Storage Area, Drum Storage Area, Boiler House, Stacker Building, Tar Stained Soil Area, and Landfill. Six monitoring wells were installed and sampled including a background location. Surface water and sediment samples were collected from five locations on Pailin Creek. Two sediment samples were also collected from Newbegun Creek. These samples were analyzed for TCL VOCs, SVOCs, pesticides, PCBs, TAL metals, and cyanide. Although EPA determined the Site qualified for listing on the NPL, the EPA decided not to list the Site. Instead the Site has been addressed as "NPL equivalent" or "Superfund Alternative Site."

20. CBS/Armstrong committed to conduct a Remedial Investigation ("RI") and Feasibility Study ("FS") under the terms of an AOC, which took effect on March 22, 2000. Three phases of Site characterization were performed between October 2011 and February 2012, October and November 2012, and September 2014. The data from these investigations are compiled and summarized in the RI Report. The RI Report, FS document, Interim Action Proposed Plan, and all other pertinent documents for the Site were made available to the public in April 2018 and early May 2018. A public comment period ensued from May 8 through June 7, 2018.

21. The decision by EPA on a remedial action to be implemented at the Site is embodied in an Interim Record of Decision ("IROD"), executed on July 30, 2018, on which the State of North Carolina has given its concurrence. The IROD includes

EPA's responsiveness summary to the public comments. EPA anticipates selecting additional response actions for the Site, which would be embodied in a final Record of Decision.

22. The Site is a facility within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

23. Hazardous substances as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), have been released at the Site, and/or there is a threat of such release at the Site, as defined by Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

24. The United States has incurred response costs for actions taken in response to the release or threat of release of hazardous substances with respect to the Site through the date of filing of this complaint. The United States will continue to incur response costs in connection with the Site in the future.

25. The United States' response actions taken with respect to the Site and the costs incurred related to those actions are not inconsistent with the National Contingency Plan, which was promulgated under Section 105(a) of CERCLA, 42 U.S.C. § 9605, and is codified at 40 C.F.R. Part 300 *et seq*.

26. The Defendants are liable under Sections 107(a)(1) and (a)(2) of CERCLA, 42 U.S.C. §§ 9607(a)(1), (a)(2).

27. In the IROD, EPA determined that the response actions are necessary to abate a danger or threat with respect to soil and groundwater contamination at the Site.

**FIRST CLAIM FOR RELIEF**
**(Cost Recovery by the United States under**
**CERCLA Section 107, 42 U.S.C. § 9607)**

28. Paragraphs 1 through 27 are re-alleged and incorporated herein by reference.

29. Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the Defendants are jointly and severally liable to the United States for all unreimbursed response costs incurred by the United States with regard to the Site through the date of filing of this complaint together with accrued interest. The United States is also entitled to a declaratory judgment pursuant to 42 U.S.C. § 9613(g)(2) that the Defendants are liable for response costs that will be binding on any subsequent action or actions to recover further response costs (other than such costs as are already being reimbursed to EPA) to be incurred by the United States with respect to the Site.

**SECOND CLAIM FOR RELIEF**
**(Injunctive Relief under CERCLA Section 106, 42 U.S.C. § 9606)**

30. Paragraphs 1 through 27 are realleged and incorporated herein by reference.

31. The President, through his delegate, has determined that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of a release of hazardous substances or a threatened release of hazardous substances at and from the Site.

32. Pursuant to Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the Defendants are jointly and severally liable to perform the remedial actions identified in the IROD, including amendments thereto, which actions EPA has determined are necessary to abate a danger or threat with respect to groundwater, soil, surface water, and sediment contamination at the Site. Defendants are also jointly and severally liable to perform the final remedial action to be selected by EPA for the Site in a Record of Decision.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests that the Court:

1. On the First Claim for Relief, enter judgment against the Defendants and in favor of the United States for all response costs incurred by the United States in connection with the Site;

2. On the First Claim for Relief, enter a declaratory judgment against the Defendants and in favor of the United States, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that the Defendants are liable for response costs, that will be binding on any subsequent action or actions to recover further response

costs (other than such costs as are already being reimbursed to EPA) to be incurred by the United States with respect to the Site;

3. On the Second Claim for Relief, enter judgment against the Defendants and in favor of the United States ordering the Defendants to perform the response actions selected in the IROD in order to abate the conditions at the Site, and in a Record of Decision selecting a final remedy for the Site;

4. Award the United States its costs of this action; and

5. Grant such other and further relief as the Court deems appropriate.

This 15th day of November, 2021

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

BY: /s/ Patricia L. Hurst

_____
PATRICIA L. HURST
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
Telephone: (202) 307-1242
Facsimile: (202) 514-0097
Email: Patricia.Hurst@usdoj.gov
D.C. Bar #438882

G. NORMAN ACKER, III
Acting United States Attorney

BY: /s/ Neal I. Fowler

_____
NEAL I. FOWLER
Assistant United States Attorney
Civil Division
150 Fayetteville Street
Suite 2100
Raleigh, NC 27601-1461
Telephone: (9l9) 856-4530
Facsimile: (919) 856-4821
Email: Neal.Fowler@usdoj.gov
N.C. Bar #27371

Attorneys for Plaintiff
United States of America


OF COUNSEL:

BIANCA JAIKARAN
Associate Regional Counsel
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street SW
Atlanta, GA 30303